[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 20, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-13292

_____

D. C. Docket No. 97-01191-CIV-LENARD

NORMAN PARKER,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT
OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 20, 2003)

Before ANDERSON, BLACK and WILSON, Circuit Judges.

BLACK, Circuit Judge:

Norman Parker, a state prisoner convicted of murder and sentenced to death, appeals the District Court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. On appeal, Parker only raises two claims: (1) the constitutional deficiency of the jury instruction on felony murder; and (2) ineffective assistance of counsel at capital sentencing. For the following reasons, we affirm the district court's denial of the petition.

## I. BACKGROUND

In 1967, Parker was sentenced to life imprisonment for a first-degree murder committed in Dade County, Florida. In February 1978, Parker escaped from prison, and committed two additional murders, one in Miami on July 18, 1978, and another in Washington D.C. in August 1978.[1] The following facts are taken from the Florida Supreme Court's opinion, on direct appeal, affirming Parker's conviction and sentence for the Miami murder:

> The evidence at trial established that on July 18, 1978, defendant [Parker] and his partner Manson, were admitted to a Miami home in order to complete an illegal drug transaction with two male occupants of the home. Soon thereafter, defendant and Manson produced a sawed-off shotgun and a chrome-plated revolver, respectively, and demanded cocaine and money from the two victims. The two victims were forced

---

[1] In separate trials, Parker was sentenced to another term of life imprisonment for the second-degree murder committed in D.C., and sentenced to death for the first-degree murder committed in Miami. Parker's habeas petition challenges constitutional errors that allegedly occurred during his trial for the Miami murder.

2

to surrender jewelry, strip naked, and lie on a bed. Two other occupants, a female and her boyfriend (Chavez), were discovered in another room and also forced to strip naked and surrender jewelry. All four victims were then confined in the same room, on the same bed. Defendant and Manson exchanged weapons and defendant guarded the four victims while Manson searched the home for additional loot. Defendant threatened to kill the victims because he said he had escaped from jail and had nothing to lose. The victims pleaded with defendant and Manson to take what they wanted and leave. Chavez also pleaded with defendant and Manson to leave his girlfriend alone. After a period of time, defendant aimed the revolver at Chavez's back, whereupon Manson handed defendant a pillow. The other three victims heard the muffled shot and nothing further from Chavez. Chavez died from a single gunshot wound to the chest. Defendant then committed a sexual battery on the female. Defendant and Manson fled, but were later identified by the surviving victims from a photographic lineup.

On August 24, 1978, defendant shot a man in a Washington, D.C., bar. A bullet from this victim's body was matched with the bullet taken from Chavez's body. Jewelry found in possession of the defendant in D.C. was similar to jewelry taken form the Miami victims. Defendant testified that he had been in D.C. during the summer of 1978, including the day that the Miami murder was committed. Four other defense witnesses testified by deposition that defendant was in D.C. during the summer of 1978 but, on cross examination, were unable to swear defendant was in D.C. during the period, July 17-19, 1978.

*Parker v. State*, 456 So. 2d 436, 439-440 (Fla. 1984) (*Parker 1*).

In the trial for the Miami murder, the jury found Parker guilty of first-degree murder, four counts of armed robbery, one count of sexual battery, possession of a weapon during a criminal offense, and possession of a weapon by a convicted felon. The jury recommended the death sentence by a vote of 10-2, and the trial judge imposed the sentence after finding five aggravating factors and no mitigating factors.

On September 6, 1984, the Florida Supreme Court affirmed his conviction and sentence on direct appeal. *See id.* On February 27, 1989, the Florida Supreme Court denied Parker's petition for habeas corpus relief. *Parker v. Dugger*, 537 So.2d 969 (Fla. 1989) (*Parker 2*). The state Circuit Court denied Parker's Rule 3.850 motion for post-conviction relief, *Florida v. Parker*, No. 78-11151-A (Fla. Cir. Ct. Nov. 28, 1998), and on February 5, 1993, the Florida Supreme Court affirmed that decision on appeal, *Parker v. State*, 611 So. 2d 1224 (Fla. 1993) (*Parker 3*). Parker filed a petition for a federal writ of habeas corpus in the Southern District of Florida, which the District Court denied on January 25, 2002. *Parker v. Moore*, No. 97-1191 (S.D. Fla. January 25, 2002) (*Parker 4*).[2] This appeal followed.

## II. STANDARD OF REVIEW

We review the district court's findings of fact for clear error and its legal conclusions and mixed questions of law and fact *de novo*. In this case, both this Court and the District Court are constrained by 28 U.S.C. § 2254. Section 2254, as amended by Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), establishes a highly deferential standard for reviewing state court judgments. *See Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). AEDPA "modified a

---

[2] On May 22, 2002, the district court entered a supplemental order, clarifying the basis for denying Parker's petition and supplementing its conclusions. *Parker v. Moore*, No. 97-1191 (S.D. Fla. May 22, 2002).

4

federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, __ U.S. __, 122 S. Ct. 1843, 1849 (2002).

Under § 2254(d) a federal habeas court can grant relief for a claim adjudicated on the merits in state court only where the adjudication in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We have previously explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1):

> A state court decision is 'contrary to' clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. A state court conducts an 'unreasonable application' of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.

*Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519 (2000).

Moreover, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson*, 300 F.3d at 1342. Section 2254(e)(1) states, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. ANALYSIS

*A.    Felony Murder*

Parker first claims that he is entitled to habeas relief because the trial court gave a constitutionally-deficient jury instruction on first-degree felony murder. During Parker's prosecution, the State pursued two theories supporting a first-degree murder conviction: premeditated murder and felony murder. From the record, it appears that the trial court's oral instructions on first-degree murder failed to instruct the jury on the elements of felony murder. The trial court read the following first-degree murder instructions to the jury:

> I now instruct you on the circumstances that must be proven beyond a reasonable doubt before Norman Parker, Jr., can be found guilty of first degree murder or any lesser included crime.
>
> There are two methods of proving first degree murder. The first method is premeditated murder. Murder, first degree. Before you can find the defendant guilty of first degree murder by premeditation, the

6

State must prove the following three elements beyond a reasonable doubt:

[1]    Julio Ceazar Chavez is dead.

[2]    The death was caused by the criminal act or agency of the defendant.

[3]    There was a premeditated killing of Julio Ceazar Chavez.

"Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant.

The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the killing.

The second method of proving first degree murder is by the felony murder rule.

The trial court gave no further oral instruction to the jury regarding first-degree felony murder.

The trial court next orally instructed the jury on the elements of second-degree murder, and then gave an oral instruction on third-degree felony murder. The third-degree felony murder instructions were as follows:

7

Before you can find the defendant guilty of third degree murder, the State must prove the following three elements beyond a reasonable doubt:

[1]     Julio Ceazar Chavez is dead.

[2]     The death occurred as a consequence of and while the defendant was engaged in the commission of or an attempt to commit a felony, other than any arson, involuntary sexual battery, robbery, burglary, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb, or which resulted from the unlawful distribution of heroin by a person over the age of 18 years when such drug is proven to be the proximate cause of death of the user.

[3]     Norman Parker, Jr., was the person who actually killed Julio Ceazar Chavez.

It is not necessary for the State to prove the killing was perpetrated with a design to effect death.

At the conclusion of all the oral instructions, the trial judge called a sidebar to ask if he had read the instructions properly. Although the trial judge twice asked if there were additions or corrections to the instructions, defense counsel did not object to the omission of the oral first-degree felony murder instruction.[3]

---

[3]During this sidebar, defense counsel only renewed an objection that is not relevant to our habeas review. In light of defense counsel's failure to object to the omission of an oral felony murder instruction, there is a reasonable inference that the omission was in fact an error in the transcription of the oral instructions. During the state habeas proceedings, however, the State conceded that the oral instruction had not been given. The Florida Supreme Court found that the trial court had omitted the oral instruction on first-degree felony murder. *See Parker 2*, 537 So. 2d 969, 970–71 (Fla. 1989). We are bound to give deference to this factual determination. 28 U.S.C. § 2254(e)(1).

8

The prosecutor then asked that written instructions be sent to the jury. The Court agreed and told the jury that it would receive "a copy of the instructions that I have just read to you." In addition to instructions on premeditated murder and third-degree felony murder, the written instructions included a complete instruction on first-degree felony murder:

Before you can find a defendant guilt of First Degree Felony Murder, the State must prove the following elements beyond a reasonable doubt:

1. JULIO CESAR CHAVEZ is dead.

2. The death occurred as a consequence of or while the defendant or an accomplice was engaged in the commission of or an attempt to commit Sexual Battery and Robbery.

3. NORMAN PARKER, JR. was the person who actually killed JULIO CESAR CHAVEZ.

It is not necessary for the State to prove that the defendant had a premeditated design or intent to kill.

The jury found Parker guilty of first-degree murder by way of a general verdict. It is therefore unknown whether the first-degree murder conviction was based on premeditation or the felony murder rule.

Parker argues that the trial court's omission of an oral felony murder instruction violated his constitutional right to have a jury determine his guilt or innocence beyond a reasonable doubt. Specifically, he contends that, because it is

9

impossible to know whether the jury found him guilty of felony murder after hearing a constitutionally infirm felony murder instruction, his conviction must be set aside under the rule of *Stromberg v. California*, 283 U.S. 359, 367–68, 51 S. Ct. 532, 535 (1931), and its progeny.

In response, the State argues Parker's claim was procedurally barred by the state courts and cannot now be addressed on federal habeas review.

### 1. *Procedural Bar*

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72 (1977). This rule is grounded in the independent and adequate state law doctrine. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991); *Harris v. Reed*, 489 U.S. 255, 260–63, 109 S. Ct. 1038, 1042–43 (1989). As the Supreme Court has recognized, application of both procedural default and the independent and adequate state law doctrine suffers from ambiguity in state court decisions; to this "common problem" the Supreme Court applied a "common solution." *Id*. at 263, 109 S. Ct. at 1043. That solution is the plain statement rule: "in determining, as we must, whether we have jurisdiction to review a case that is alleged to rest on adequate and independent state grounds, we

10

merely assume that there are no such grounds when it is not clear from the opinion itself that the state court relied upon an adequate and independent state ground." *Michigan v. Long*, 463 U.S. 1032, 1042, 103 S. Ct. 3469, 3477 (1983) (citation omitted). Applying this principle in the habeas context, the Supreme Court has held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris*, 489 U.S. at 263, 109 S. Ct. at 1043 (internal quotations omitted); *see also Coleman*, 501 U.S. at 734–35, 111 S. Ct. at 2557 (same). The mere fact that a federal claim might have been procedurally defaulted does not prevent a federal habeas court from reviewing that claim if the state court did not rely on the procedural bar as an independent basis for its decision. *Harris*, 489 U.S. at 261–62, 109 S. Ct. at 1042. This Court has further clarified that a federal claim is not barred on federal habeas review if the state courts actually reject a claim on the merits. *Davis v. Singletary*, 119 F.3d 1471, 1479 ("It is settled that once the state courts have ignored any procedural bar and rejected a claim on the merits—not in the alternative but as the only basis of decision—that claim is not barred from federal habeas review.").

11

Mindful of the plain statement rule and its application in the habeas context, we turn to the decision of the Florida Supreme Court. In its earlier opinion denying Parker's state habeas petition, the Supreme Court of Florida ruled as follows:

> Petitioner [Parker] next claims that the felony murder instructions given to the jury were constitutionally deficient and that appellate counsel was ineffective for failing to raise this issue. During the oral instructions, the trial judge inadvertently omitted the definition of first-degree felony murder. The definition was included in the written instructions which the jury was told it should review if in doubt on any instruction. Although the judge asked if there had been any omissions to the instructions, trial counsel did not bring the omission to the attention of the court and *the issue was not preserved for appeal.* Appellate counsel cannot be faulted for not raising an unpreserved issue. Moreover, *even if the written instructions were not sufficient to advise the jury*, the omission is harmless.

*Parker 2*, 537 So. 2d at 970–71 (emphases added).

At the outset, we note that the parties dispute exactly what claims the Supreme Court was discussing in this passage. The State contends that the relevant claim—Claim II in Parker's state habeas petition—raised only an ineffective assistance of appellate counsel claim, and the alleged jury instruction error served merely as a predicate for this ineffectiveness claim. If Claim II raised only an ineffectiveness claim, then the Florida Supreme Court's opinion in *Parker 2* is irrelevant to our determination of whether the substantive challenge to the jury instructions Parker now urges on federal habeas review is procedurally barred.

12

Parker, on the other hand, responds that Claim II in the state habeas petition was not limited to an ineffectiveness claim; rather, he brought both (1) a substantive challenge to the jury instructions as a fundamental error under Florida law, and (2) an ineffectiveness claim based on appellate counsel's failure to argue this substantive claim on direct appeal. As Parker sees it, the alleged jury instruction error was a freestanding, substantive challenge, and Claim II in the state habeas petition was a compound claim asserting two related grounds for relief.

After reviewing Parker's state habeas petition, we cannot but conclude that Claim II—which the Florida Supreme Court discussed in the passage quoted above—was a compound claim raising both substantive jury instruction error and appellate ineffectiveness for failing to raise to the jury instruction error on direct appeal. We begin with the caption of Claim II, which appeared as follows: "The trial court's constitutionally deficient felony murder instruction was fundamental error which violated Mr. Parker's Fifth, Sixth, Eighth, and Fourteenth Amendment rights, *and* appellate counsel rendered ineffective assistance by failing to urge this dispositive, critical constitutional claim" (emphasis added). The conjunction of two independent (though related) claims for relief indicates that Parker's Claim II included a substantive challenge to the jury instructions, not just a claim of ineffective assistance of appellate counsel, as the State contends.

13

Turning to the body of Parker's arguments in his state habeas petition, it is apparent that the substantive challenge to the jury instructions was not just part of a two-part, compound claim, but rather it was the more prominent of the two arguments presented in Claim II.[4] Parker relied most heavily on *Franklin v. Florida*, 403 So. 2d 975 (Fla. 1981), a case in which the Florida Supreme Court held that an error in the jury instructions on felony murder was fundamental error under Florida law. *Franklin* did not include any claim of ineffective assistance of counsel; it was decided solely on a substantive challenge to the deficient jury instructions. Parker specifically argued that "[t]he jury, not knowing the elements, could not have determined whether those elements were proven beyond a reasonable doubt. Mr. Parker's conviction therefore stands in stark violation of the most rudimentary of due process rights." When Parker finally got around to arguing appellate ineffectiveness, he introduced that contention with "[m]oreover," suggesting that it was a separate and additional ground for relief, not the sole ground predicated on the alleged jury instruction error. And after his brief discussion of appellate ineffectiveness, he returned to his substantive argument, claiming he was entitled to state habeas relief because the

---

[4]We note that Parker's discussion of Claim II in his state habeas petition was 12 pages. Only one of these pages was devoted to appellate ineffectiveness, and the three paragraphs on this issue were presented in the middle of the much longer and more thorough discussion of Parker's substantive challenge to the jury instructions.

14

instruction error "remove[d] central issues from their rightful place in the jury's domain and den[ied] the accused the right to a verdict as to his guilt or innocence provided *by the jury*." If anything, Parker's state habeas petition treated the claim of appellate ineffectiveness as a subordinate issue appended—almost as an afterthought—to his substantive challenge to the jury instructions.

Our conclusion that Parker's state habeas petition presented a compound claim that included a substantive challenge to the felony murder instructions is bolstered by Parker's reliance on Florida's law of "fundamental error." From the first page of his state habeas petition, Parker complained of "fundamental constitutional errors," and he specifically stated, "The petition pleads claims involving fundamental constitutional error." Parker's claim of fundamental error is significant because, under Florida law, a jury instruction error can be challenged even absent a contemporaneous objection at trial if the error was a fundamental error. *Archer v. Florida*, 673 So. 2d 17, 20 (Fla. 1996). The Florida Supreme Court has held that an instruction error can constitute fundamental error. *See Florida v. Jones*, 377 So. 2d 1163, 1165 (Fla. 1979) ("In the present case, there was a complete failure to give any instruction on the elements of the underlying felony of robbery. This was fundamental error."). Furthermore, Parker cited several cases from Florida appellate courts holding that a fundamental error could be corrected whenever the issue was

15

presented, on direct appeal or in post-conviction proceedings. *See Nova v. Florida*, 439 So. 2d 255 (Fla. Dist. Ct. App. 1983), *limited by Moreland v. Florida*, 582 So. 2d 618, 619 n.1 (Fla. 1983); *Dozier v. Florida*, 361 So. 2d 727 (Fla. Dist. Ct. App. 1978); *Flowers v. Florida*, 351 So. 2d 387 (Fla. Dist. Ct. App. 1977). The clear import of Parker's fundamental error argument was that he was entitled to relief in his state habeas proceedings for the substantive jury instruction error, despite his trial counsel's failure to object at trial.[5] His substantive challenge was thus presented to the Florida Supreme Court during his state habeas proceedings.

In addition, we note that the State's response to Parker's state habeas petition construed Claim II as a substantive challenge to the felony murder instructions. The relevant section of the State's response brief was captioned simply "Incomplete Felony Murder Instruction." Nowhere in that brief does the State present any argument related to an ineffective assistance of counsel claim. Rather, the State

_____

[5]We acknowledge that the State interprets Parker's fundamental error argument as an effort to show that his appellate counsel could have presented the challenge on direct appeal despite the counsel's failure to object to the jury instructions at trial. *See Archer*, 673 So. 2d at 20. As the State sees it, Parker's fundamental error argument only goes to show that appellate counsel was deficient under *Strickland*. The State's interpretation of Parker's fundamental error argument is too cramped, however, especially in light of the Florida cases Parker cited in support of the proposition that the alleged fundamental error—in this case, the substantive jury instruction error—could be corrected at any time. In other words, Parker was pressing the argument that, under Florida law, he did not need to resort to an ineffectiveness claim in order to challenge the instruction error during his state habeas proceedings. It is not our place to pass on whether this argument could succeed under Florida law; what matters for federal habeas review is that Parker presented a substantive challenge to the jury instructions during his state habeas proceedings.

argued only that the substantive error of omitting an oral instruction on first-degree felony murder amounted to harmless error, based on the overwhelming evidence of premeditation. The State's response brief confirms our reading of Parker's Claim II—that it was primarily a substantive challenge to the jury instructions and only secondarily an ineffectiveness claim.

Because we conclude that Claim II in Parker's state habeas petition included a substantive challenge to the felony murder instruction, we must review the Florida Supreme Court's decision in *Parker 2* to determine whether this substantive challenge is now procedurally barred. At no point in its analysis of the felony murder instruction claim (quoted above) did the state court expressly bar Parker's claim. Its treatment of his claims related to the jury instructions is in stark contrast with its explicit procedural bars on all of Parker's other claims. *See, e.g., id.* at 970 (finding claim regarding admission of statements "procedurally barred"); *id*. at 972 (finding challenge to cold, calculated, premeditated aggravator "procedurally barred"); *id*. at 973 (finding claim "procedurally barred"). In fact, Parker raised seven different claims in his state habeas petition, and the Florida Supreme Court specifically stated that all of them except the compound claim related to the felony murder instructions were procedurally barred. The Florida Supreme Court clearly met the requirements of the plain statement rule with regard to all of Parker's other claims; its failure to

comply with the plain statement rule with regard to the substantive jury instruction claim is telling.

The relevant passage from the state court's opinion itself suggests that the Florida Supreme Court did not bar Parker's substantive challenge. The only thing in *Parker 2* that suggests a procedural bar is the Florida Supreme Court's statement, "the issue was *not preserved* for appeal." *Parker 2*, 537 So. 2d at 971 (first emphasis in quoted text above). The text of the opinion indicates, however, that this statement was merely part of the Court's recital of the procedural history relevant to Parker's ineffectiveness claim. The conjunction "and" indicates a second fact conjoined with the preceding fact in the state court's recital of the procedural history. Were the clause, "the issue was not preserved for appeal," a conclusion barring Parker's first, substantive challenge to the jury instructions, the state court would have used the conjunction "so," not "and." We therefore conclude that the Florida Supreme Court's statement that the issue was not preserved for appeal is a premise for the court's conclusion that "Appellate counsel cannot be faulted for not raising an unpreserved issue."[6]

---

[6]In addition, we note that, given Parker's argument that the substantive instruction error was fundamental error under Florida law, it may have been difficult for the Florida Supreme Court to bar Parker's claim because of the absence of a contemporaneous objection. A failure to object at trial is forgiven when the error is fundamental under Florida law. As Parker's able counsel suggested at oral argument, if this isolated statement in the Florida Supreme Court's opinion had been the basis for imposing a procedural bar, Parker would have a colorable

18

In summarizing its ruling on Parker's habeas petition, the Florida Supreme Court wrote, "[h]aving found that all claims are either procedurally barred or nonmeritorious, we deny all relief." *Parker*, 537 So. 2d at 973. As explained above, the state court explicitly barred six of Parker's seven claims; the only claim that could have been found "nonmeritorious" was Parker's compound claim related to the felony murder instruction. Because we conclude that Parker's compound Claim II in his state habeas petition included a substantive challenge to the jury instructions, we cannot accept that the state court's "nonmeritorious" finding applied to the ineffective assistance claim only. At the very least, there is no plain statement that the Florida Supreme Court did not consider the merits of the substantive challenge to the jury instructions and find that challenge to be nonmeritorious.

Furthermore, it is impossible to characterize the state court's harmless error analysis of the substantive challenge to the jury instructions as nothing more than an alternative basis for its procedural bar ruling, so that the alternative nature of the harmless error analysis now precludes federal habeas review. *See Davis*, 119 F.3d at 1479 (noting that an alternative merits holding leaves the procedural bar in place).

---

argument that the state court was applying inconsistent procedural rules which were therefore inadequate grounds to prevent our federal habeas review. *See James v. Kentucky*, 466 U.S. 341, 348–49, 104 S. Ct. 1830, 1835 (1984) (holding that a procedural rule that is not "firmly established and regularly followed" cannot bar federal court review); *Ford v. Georgia*, 498 U.S. 411, 111 S. Ct. 850 (1991).

An alternative holding is suggested by the hypothetical "even if" that introduces the harmless error analysis. *See Parker 2*, 573 So. 2d at 971 (second emphasis in quoted text above). The hypothetical, however, is not "even if there were no procedural bar." Rather, the hypothetical presumes only that the written instructions were not sufficient to instruct the jury on felony murder.[7] Even if the state court's harmless error analysis is an alternative holding on the merits,[8] it is an alternative to a different merits holding, not a procedural default.

Finally, the Florida Supreme Court's ruling on Parker's Rule 3.850 motion only confirms our finding that there is no procedural bar. In its opinion, the Florida Supreme Court stated that Parker's claim regarding the felony murder instruction was procedurally barred. *Parker 3*, 611 So. 2d at 1226 ("The procedurally barred claims are . . . 2) the jury instructions failed to define felony murder"). This is not surprising, because the Florida Courts always bar claims in Rule 3.850 proceedings if those claims were brought or could have been brought earlier. *See id.* The state court further explained in a footnote, however, that "Claim[] 2 [was] not only

---

[7]It would be possible to interpret the Florida Supreme Court's harmless error analysis as going to *Strickland*'s prejudice prong of Parker's appellate ineffectiveness claim. If that were the case, then we would have to conclude that the Florida Supreme Court never ruled on Parker's substantive challenge to the jury instructions at all, and since we have already concluded that Parker presented the substantive challenge in his state habeas petition, that would mean that his claim was not procedurally barred.

[8]We discuss the validity of the state court's harmless error analysis *infra*.

procedurally barred, [it] was found to be without merit or harmless in Parker's habeas proceeding." *Id.* at n.2. If Parker's substantive challenge to the deficient felony murder instruction had not been raised in his state habeas petition, the Florida Supreme Court's footnote could not have noted that Parker's claim had been found harmless.

We therefore conclude it "fairly appears" that the Florida Supreme Court's opinion in *Parker 2* did not procedurally bar Parker's substantive challenge to the jury instructions. *Coleman*, 501 U.S. at 740, 111 S. Ct. at 2559.[9] And any doubts we might have about the Florida Supreme Court's ruling must be settled by the plain statement rule: if the application of the procedural bar is not plainly stated in the opinion, we must decline to apply a procedural bar and instead address the federal issue on the merits. *Coleman*, 501 U.S. at 734–35, 111 S. Ct. at 2557; *Harris*, 489 U.S. at 263, 109 S. Ct. at 1043; *see also Long*, 463 U.S. at 1042, 103 S. Ct. at 3477. The District Court therefore erred in applying a procedural bar to this claim, and we will proceed to address its merits.

### 2. *Merits*

---

[9]Of course, the procedural bar imposed in *Parker 3* cannot prevent federal habeas review of the substantive jury instruction challenge. *See Davis*, 119 F.3d at 1479 ("Once a state supreme court on direct review has eschewed the merits of a claim, no amount of procedural bar holdings as to that claim in future proceedings will suffice to bar the claim from federal habeas review.").

Turning to the merits, we may grant Parker habeas relief with respect to a claim that was adjudicated on the merits in state court only if the state court's decision was "contrary to, or an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). Parker contends that this deferential standard does not apply in this case because the Florida Supreme Court failed to discuss or even cite any relevant federal case law relating to his challenge to the jury instructions. *See Romine v. Head*, 253 F.3d 1349, 1365 (11th Cir. 2001) ("[W]hen there is grave doubt about whether the state court applied the correct rule of governing federal law, § 2254(d)(1) does not apply."). Unfortunately for Parker, this Circuit has already rejected such an argument in *Isaacs v. Head*, 300 F.3d 1232, 1258–60 (11th Cir. 2002). In that case, a petitioner challenged the admissibility of his statements made in custody under the authority of *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880 (1980). The state court rejected that claim but did not cite *Edwards*. On federal habeas review, we decided that AEDPA deference nonetheless applied. We stated that we had no doubt that the state court had fairly considered the *Edwards* claim and rejected it, and § 2254(d)(1) therefore applied. *Isaacs*, 300 F.3d at 1260. In reaching this conclusion, we explicitly distinguished *Romine* as a "narrow decision." *Id*. at 1259 (citing *Wright v. Secretary for Dep't of Corrections*, 278 F.3d 1245, 1254 (11th Cir. 2002) (describing *Romine* as a case in which "it was unclear whether the federal

22

constitutional issue had been raised and decided in state court"). All that is required under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion. *See Wright*, 278 F.3d at 1254; *Isaacs*, 300 F.3d at 1259–60. For that reason, "the summary nature of a state court's decision does not lessen the deference that is due." *Wright*, 278 F.3d at 1254.

Having determined above that Parker presented his substantive challenge to the jury instructions during his state habeas proceedings, we also conclude that the state court ruled on that challenge. The state court's failure to cite the relevant Supreme Court precedents does not mean that AEDPA deference does not apply. *See Isaacs*, 300 F.3d at 1260. Accordingly, we will not grant Parker relief unless the Florida Supreme Court's decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Parker's substantive challenge to his conviction rests on the trial court's failure to give an oral jury instruction defining the elements of first-degree felony murder, and the jury's general verdict does not disclose whether it convicted Parker on the basis of felony murder or the prosecution's alternative premeditation theory. Parker claims that, despite the full and correct written instructions on felony murder and the

instructions on third-degree felony murder provided to the jury, the deficiency in the oral instructions renders the entire verdict constitutionally infirm.

Parker's substantive challenge to the jury instructions relies on the conjunction of three different legal principles. First, it is a commonplace of criminal law that a conviction violates due process if the jury did not have to find the elements necessary for a guilty verdict beyond a reasonable doubt. *See, e.g.*, *Sandstrom v. Montana*, 442 U.S. 510, 526, 99 S. Ct. 2450, 2460 (1979); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970).

Second, most constitutional violations are subject to harmless error review. *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833 (1999); *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 1263 (1991); *Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 827 (1967). Only errors deemed "structural" require automatic reversal. *See, e.g., Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078 (1993) (defective reasonable-doubt instruction); *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963) (complete denial of counsel). Harmless error analysis applies, for example, where a jury instruction omits an element of the offense. *See Neder*, 527 U.S. at 9, 119 S. Ct. at 1833.

Third, "a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is

insufficient, because the verdict may have rested exclusively on the insufficient ground." *Zant v. Stephens*, 462 U.S. 862, 881, 103 S. Ct. 2733, 2745 (1983); *see also Stromberg v. California*, 283 U.S. 359, 367–68, 51 S. Ct. 532, 535 (1931). In such circumstances, it is impossible to determine on which basis the jury reached its verdict, so deficiency in only one basis requires the entire verdict to be set aside. *Sandstrom*, 442 U.S. at 526, 99 S. Ct. at 2460; *see also Stromberg*, 283 U.S. at 368, 51 S. Ct. at 535 ("If any of the [bases] in question is invalid under the Federal Constitution, the conviction cannot be upheld.").

Parker's argument combines these three principles as follows. There can be little doubt that, *ab initio*, the failure of the state trial court to give an instruction on first-degree felony murder violated Parker's due process rights. *See Sandstrom*, 442 U.S. at 526, 99 S. Ct. at 2460. Without any explanation of the elements of first-degree felony murder, the jury could not properly have found Parker guilty under the second of the prosecution's alternative theories for first-degree murder. There is no way to know whether the jury convicted him of first-degree murder on the basis of the prosecution's felony murder theory because the jury returned only a general verdict. The deficiency in the felony murder instruction therefore requires the entire conviction to be set aside. *Stephens*, 462 U.S. at 881, 103 S. Ct. at 2745; *Stromberg*, 283 U.S. at 368, 51 S. Ct. at 535. Moreover, the error in the oral instructions cannot

be rendered harmless by the complete written instructions given the jury, because harmless error review does not apply. *See Sullivan*, 508 U.S. at 280–81, 113 S. Ct. at 2082. As Parker sees it, the *Stromberg* error renders the entire jury verdict a nullity, leaving nothing to review for harmless error. *Id.* at 280, 113 S. Ct. at 2082 ("There is no *object*, so to speak, upon which harmless-error scrutiny can operate.").

We think Parker overstates the principle of *Stromberg*, however. While a *Stromberg*-type error would require his conviction to be set aside, there is only a *Stromberg* error if one of the independent bases for the jury's verdict is "insufficient" or "unconstitutional."[10] *Stephens*, 462 U.S. at 881–82, 103 S. Ct. at 2745. An independent basis is insufficient where it would not support the jury's verdict, because of constitutional error or any other reason. *See, e.g., Yates v. United States*, 354 U.S. 298, 312, 77 S. Ct. 1064, 1073 (1957) ("[T]he proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable

---

[10]As *Stephens* explains, there are two slightly different rules in *Stromberg*. The first governs cases in which a jury is instructed on two or more independent grounds and one of those grounds is "insufficient." *Stephens*, 462 U.S. at 881, 103 S. Ct. at 2745 ("One rule derived from the *Stromberg* case requires that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground."). The second rule governs those cases in which one of the charged grounds is an act protected by the Constitution. *Id*. at 883–84, 103 S. Ct. at 2746. The State argues that *Stromberg* is inapplicable because neither of the prosecution theories involved constitutionally-protected conduct. This is beside the point because Parker is relying on the first rule of *Stromberg*, which does not require that one of the grounds on which the jury was instructed involve constitutionally-protected conduct. *See Stephens*, 462 U.S. at 881, 103 S. Ct. at 2745.

on one ground, but not on another, and it is impossible to tell which ground the jury selected"), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141 (1978). A constitutional error undermines the jury's verdict, however, only if that error was not harmless, because most constitutional errors are subject to harmless error review. *Neder*, 527 U.S. at 8, 119 S. Ct. at 1833.

Thus, where there are two or more independent bases for a jury's verdict, we apply harmless error review to each of them separately. *Stromberg* does limit our evaluation of harmlessness. An error with regard to one independent basis for the jury's verdict cannot be rendered harmless solely because of the availability of the other independent basis. If the law were otherwise, the rule of *Stromberg* would be eviscerated. At the same time, *Stromberg* cannot foreclose harmless error review altogether, because an independent basis for a jury verdict is not insufficient if the relevant error is, considered separately, harmless.[11] This is the only way to harmonize

---

[11]As noted above, the only cases in which we do not apply harmless error review to a constitutional violation are those in which the error is structural. *See Neder*, 527 U.S. at 8, 119 S. Ct. at 1833 (listing as structural defects complete denial of counsel, biased trial judge, racial discrimination in grand jury selection, denial of self-representation at trial, denial of public trial, and defective reasonable-doubt instruction). The class of such cases is "very limited." *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549 (1997)); *Rose v. Clark*, 478 U.S. 570, 578, 106 S. Ct. 3101, 3106 (1986) (noting that errors to which harmless error review does not apply are "the exception and not the rule"); *United States v. Sanchez*, 269 F.3d 1250, 1273 n.43 (11th Cir. 2001) (en banc) ("The list in *Neder* of structural errors not subject to harmless-error review is a short one.").

Other than his citations to *Sullivan*—a structural error case, *see Neder*, 527 U.S. at 8, 119 S. Ct. at 1833—Parker does not really argue that the alleged instruction error at issue here was a structural error. And even if he did, the law of this Circuit is to the contrary. *See Rogers v.*

27

*Stromberg* with the general principle that most constitutional violations are subject to harmless error review.

Our decision in *Adams v. Wainwright*, 764 F.2d 1356 (11th Cir. 1985), is not to the contrary. We stated in that case, "*Stromberg* does not suggest a harmless error standard based on overwhelming evidence of guilt under the valid portion of the jury charge. Rather, *Stromberg* states simply that if it is 'impossible' to say on which ground the verdict rests, the conviction must be reversed." *Id.* at 1362 (citing *Stromberg*, 283 U.S. at 368, 51 S. Ct. at 535). Parker reads this statement as forbidding harmless error review altogether. Yet, the *Adams* opinion by its own terms only limits harmless error analysis so that an instruction error is not found harmless "under the valid portion of the jury charge." *Adams*, 764 F.2d at 1362. This is entirely consistent with our interpretation of *Stromberg*, that error with respect to one independent basis is not rendered harmless solely because of the availability of another independent basis where it is impossible to say on which basis the jury's verdict rests. *Adams* limited the scope of the harmless error analysis, but nothing in that opinion foreclosed harmless error review altogether.

---

*United States*, 94 F.3d 1519, 1525 (11th Cir. 1996) ("We would be hard pressed to conclude that incomplete jury instructions exemplify a structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards.") (internal quotation omitted and modifications in original).

In light of this view of *Stromberg*, it is clear that the Florida Supreme Court's harmless error analysis in *Parker 2* was "contrary to" clearly established federal law. The Florida Supreme Court concluded the deficient felony murder instructions constituted harmless error because of the overwhelming evidence of premeditation. *See Parker 2*, 537 So. 2d at 971. This is exactly what *Stromberg* forbids: a conclusion that a constitutional error in one basis for a jury's verdict is harmless because of the availability of another, independent basis for the jury's verdict.

Nonetheless, when we consider Parker's substantive jury instruction challenge *de novo*, we conclude the deficient felony murder instruction was, in fact, harmless. Limiting our harmless error analysis to the felony murder instructions alone, we conclude the complete written instructions and the third-degree felony murder instructions render the error in the trial court's oral instructions harmless. As the Supreme Court has explained, "The question in . . . a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1737 (1977) (quotation omitted). The challenged instruction must not be viewed in isolation; the habeas court should consider the context of the instructions as a whole as well as the entire trial record. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482 (1991); *Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir. 1997) ("A defendant's

29

right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair.").[12]  Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Kibbe*, 431 U.S. at 155, 97 S. Ct. at 1737.  In such cases, the habeas petitioner's burden is "especially heavy." *Id.*; *Devier v. Zant*, 3 F.3d 1445, 1465 (11th Cir. 1993).  This is especially true where the habeas petitioner failed to object to the incomplete instruction at trial.  *Kibbe*, 431 U.S. at 154, 97 S. Ct. at 1736 ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").

Parker does not argue the jury heard an erroneous instruction on felony murder; rather, he complains that no oral instruction on felony murder was given.  This omission cannot be reviewed in isolation from the remainder of the trial record.  *McGuire*, 502 U.S. at 72, 112 S. Ct. at 482; *Agan*, 119 F.3d at 1545.  The trial record

---

[12]Note that our review of an instruction error during federal habeas proceedings may differ from how we would review a similar error on direct appeal.  The law of this Circuit concerning appeals involving instructions that omit an essential element of the offense was articulated in Justice Scalia's concurrence in *Carella v. California*, 491 U.S. 263, 267, 109 S. Ct. 2419, 2421–22 (1989) (Scalia, J., concurring).  *See Rogers v. United States*, 94 F.3d 1519, 1526 (11th Cir. 1996) (finding Justice Scalia's concurrence persuasive in the context of an instruction omission on direct appeal).  In *Carella*, Justice Scalia reasoned that, because jury factfinding is constitutionally essential, harmless error review of instruction errors differs from the typical form of such analysis in that there should be no "expansive inquiry" into the trial record as a whole.  *Carella*, 491 U.S. at 267, 109 S. Ct. at 2421–22 (Scalia, J., concurring).  The implication is an instruction error can be found harmless only on the basis of the *instructions* as a whole, not the entire trial record.  On federal habeas review, however, our harmless error analysis is not so cabined.  *See McGuire*, 502 U.S. at 72, 112 S. Ct. at 482; *Agan*, 119 F.3d at 1545.

includes the written instructions given to the jury, and those instructions contained a proper felony murder instruction. At worst, the oral instructions were incomplete with respect to the felony murder charge, but placed in context, the instructions were corrected by the written instructions given to the jury. The prosecution argued the felony murder theory as an alternative during its closing arguments. The trial judge specifically instructed the jury that there were two methods of proving first-degree murder, and it mentioned—without further explanation—that the second method was the felony murder rule. In addition, the trial judge gave a complete and accurate instruction on third-degree murder, the substance of which was similar to the omitted first-degree felony murder instruction.[13] If the jury had been persuaded by the prosecution's first-degree felony murder argument but confused by the omission in the oral instructions of any explanation of the elements of first-degree felony murder, the jury had available the full and complete first-degree felony murder instruction in the trial court's written instructions. Under these circumstances, the omission of an oral first-degree felony murder instruction would not have misled the jury to the point of making the trial unfair. *Agan*, 119 F.3d at 1545. The incomplete oral instruction

---

[13]The difference between the first-degree and third-degree felony murder instructions is the list of felonies that will support the greater offense. First-degree felony murder applies only when the underlying felony is sexual battery or robbery; third-degree felony applies when the underlying felony is other than sexual battery, robbery, and several other offenses not relevant here. In all other respects, the first-degree and third-degree felony murder instructions are identical.

is not prejudicial in light of the complete written instructions on first-degree felony murder and third-degree felony murder. *Kibbe*, 431 U.S. at 155, 97 S. Ct. at 1737. In addition, Parker did not object during his trial to the incomplete oral instruction on felony murder. *Parker*, 537 So. 2d at 970. Accordingly, Parker cannot meet his heavy burden of showing that the incomplete felony murder oral instruction so infected his trial as to violate due process. *Kibbe*, 431 U.S. at 154, 97 S. Ct. at 1737.

This conclusion is supported by other of our Circuit precedents. In *Adams*, the habeas petitioner challenged the trial court's failure to instruct on the elements of the specific felonies that constituted an aggravating factor. *See Adams*, 764 F.2d at 1364. We concluded that these incomplete jury instructions did not so infect the entire sentencing procedure that the penalty imposed violated due process. *Id*. In particular, we emphasized that the habeas petitioner had failed to object at trial, *id.* at 1365, and that the relevant instructions were not substantively incorrect but instead only incomplete. *Id*. at 1364–65. Similarly, in *Devier*, the habeas petitioner challenged the trial court's failure to instruct as to the standard of proof for a crime that served as an aggravating circumstance. *Devier*, 3 F.3d at 1465. Citing *Adams*, we stressed that the petitioner had not objected to the incomplete instruction at trial and that the instructions were merely incomplete, not substantively erroneous. *Id*. at 1466. Accordingly, we reversed the district court's grant of habeas relief.

Parker's case is not meaningfully distinguishable from *Adams* and *Devier*. Like the petitioners in those cases, Parker failed to object at trial to the incomplete oral instructions on first-degree felony murder. *Parker*, 537 So. 2d at 970. Also like *Adams* and *Devier*, the instruction error was an incomplete instruction, not a substantively erroneous instruction. An incomplete instruction is much less prejudicial than a substantively erroneous one. *Kibbe*, 431 U.S. at 155, 97 S. Ct. at 1737. In addition, the jury in Parker's case did get a complete and accurate first-degree felony murder instruction, though it came only in the written instructions. In *Adams* and *Devier*, by contrast, nothing indicates that the jury ever received a complete instruction. For this reason, there is even less prejudice to Parker than there was to the defendants in *Adams* and *Devier*.

Parker relies on *Harmon v. Marshall*, 69 F.3d 963 (9th Cir. 1995), a case in which the Ninth Circuit refused to apply harmless error review to a trial court's failure to supply any instructions on any elements for two offenses. The Ninth Circuit relied in part on its decision in *Guam v. Marquez*, 963 F.2d 1311 (9th Cir. 1992), in which it declined to review for harmless error a trial court's failure to give oral instructions to a jury while providing the jury with written instructions. According to the Ninth Circuit, "It is impossible to know whether the jury in fact read the instructions on the elements of the offenses." *Harmon*, 69 F.3d at 966 (citing

33

*Marquez*, 963 F.2d at 1316). These Ninth Circuit precedents are not persuasive, however. The Ninth Circuit clearly relied upon earlier precedents in which it had found instruction error as to one element of an offense to be reversible *per se*. *See Harmon*, 69 F.3d at 965 (citing cases). The Supreme Court, however, has held that the omission of instructions as to one element of an offense does not preclude harmless error review. *Neder*, 527 U.S. at 9, 119 S. Ct. at 1833 ("Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."). In light of *Neder*, *Harmon* is not persuasive.

The complete written instructions on first-degree felony murder and the instructions on third-degree felony murder render the deficient oral instruction on first-degree felony murder harmless. This means the prosecution's felony murder theory standing alone—as it must be analyzed under *Stromberg*—was itself a sufficient basis for the jury's verdict. Consequently, there is no error under *Stromberg*; either independent ground for conviction presented to the jury would have been sufficient, standing alone, for the jury to convict. We therefore reject Parker's substantive challenge to the felony murder instruction, and we will not grant him habeas relief on this claim.

34

*B.*     *Ineffective Assistance of Counsel at Capital Sentencing*

Next, Parker claims that he is entitled to habeas relief because his attorneys rendered ineffective assistance of counsel at capital sentencing.

Parker was originally represented by two lawyers from the Public Defender's Office, Mr. Aaron and Mr. Mervis. These lawyers retained Dr. Arthur Stillman, a physician/psychiatrist, to evaluate Parker in part to develop mitigating factors for presentation at sentencing. Dr. Stillman conducted an extensive evaluation of Parker, and concluded that Parker engaged in antisocial acts because of substance abuse, and that he might suffer from an anti-social personality disorder. He also hinted that evidence of substance abuse would be helpful in developing mitigating factors.

Aaron and Mervis left the Public Defender's Office before Parker's trial, and Parker's case was reassigned to Daniel Valeyos and Michael Roffino, who represented Parker through his trial and sentencing. Roffino testified that Aaron and Mervis had fully prepared for the trial and most of the work had already been done when he inherited the case shortly before trial. Thus, he and Valeyos spent most of their time and efforts investigating and preparing for the guilt phase of the trial. Their strategy was to focus on the guilt phase in hopes of an acquittal, and then, if necessary, rely primarily on lingering or residual doubt at the penalty phase. Although Roffino claims Velayos was primarily responsible for the sentencing phase,

both attorneys worked on the sentencing phase and Velayos testified he and Roffino split the responsibility for the sentencing phase all along.

Counsel investigated Parker's background, talked with some of Parker's family members, including Parker's stepmother, and knew "quite a bit" about Parker's teenage years. Counsel "made numerous attempts to get a hold of family members to get some information on Mr. Parker's background." Parker's family members, however, were either "unconcerned or uncooperative." Also, Parker was not helpful in finding family members because he had not been in contact with them in many years due to his previous incarceration.

Counsel decided not to introduce evidence of drug abuse because Parker denied using drugs and such evidence was inconsistent with Parker's participation in a "scared straight" anti-drug program in prison. Additionally, there was no evidence indicating that the person who had committed the offense was acting under the influence of drugs or alcohol.

Counsel did not call Dr. Stillman to testify during the penalty phase because Parker's previous attorneys had indicated the down sides of Dr. Stillman's evaluation would outweigh the positive sides. Specifically, counsel did not want Dr. Stillman to testify that Parker was "sociopathic," and that his personality traits were consistent with the crime that had taken place. Counsel thought such evidence would be

36

inconsistent with Parker's denials that he committed the crimes and their lingering doubt strategy at sentencing. Furthermore, counsel did not see anything which indicated that Parker had mental health problems.[14]

Counsel did not present evidence of Parker's military service because Parker had gone AWOL, stolen a military vehicle, been sent to federal prison, and been dishonorably discharged.

At sentencing, counsel primarily relied on lingering doubt. Dorothea Parker, Parker's step-mother, was Parker's only witness. Her main concern when testifying appeared to be that the jury would blame her for her stepson's deeds. Counsel also introduced letters that people had written commending Parker for his work in a "scared straight" anti-drug program, in which he made presentations about the dangers of drug abuse. The jury also heard evidence from the State that Parker had committed two previous murders for which he was convicted and received life sentences. *See Parker 1*, 456 So. 2d at 440.

---

[14]As for Parker's head injuries, counsel received some information that Parker had fallen, but did not know Parker was seriously injured.

The jury recommended the death penalty by a vote of 10-2. The trial judge imposed the death penalty after finding five aggravating factors and no mitigating factors.[15]

Parker raised claims of ineffective assistance of counsel in his Rule 3.850 motion filed in Circuit Court. In December 1998, the Circuit Court conducted a three-day evidentiary hearing during which it heard and considered evidence on Parker's claim of ineffective assistance of counsel at capital sentencing. The court heard testimony from Parker's trial counsel, Parker's family members, Dr. Stillman, and Dr. Haber.

Three of Parker's cousins, a sister and aunt testified that Parker was raised by his uncle and grandmother, had abused drugs, was dropped on his head when he was two, and run over by a train when he was 12 or 13.

Dr. Stillman testified he believes Parker was brain damaged and abusing substances at the time of the crime, which aggravated Parker's frontal lobe damage. Dr. Stillman believes this is corroborated by Parker's history of violent behavior and his two childhood head injuries.

---

[15] The trial judge found the crime was (1) cold, calculated and premeditated, (2) committed under sentence of imprisonment, (3) followed a prior violent felony conviction, (4) committed during the course of a sexual battery, and (5) committed for pecuniary gain.

Dr. Haber testified he examined Parker, reviewed the trial testimony, read Dr. Stillman's reports and read affidavits from Parker's family members. Dr. Haber concluded Parker was functioning adequately. Although Dr. Haber found "soft signs" of organic brain damage, he found no hard signs of brain damage, and he stated that these "soft signs" might be the result of fatigue and not brain damage. Furthermore, he found that the facts of the crime were consistent with a person having good cognitive control and inconsistent with a person having a brain dysfunction or a person who was intoxicated.

The Circuit Court denied Parker's claim of ineffective assistance of counsel at capital sentencing, finding that Parker had not established prejudice under *Strickland*. The court found the testimony from Parker's family to have "little impact" and Dr. Stillman's testimony to be "wholly unpersuasive." The Circuit Court then stated:

> The Court cannot conclude that the jury likely would have been persuaded by such testimony to recommend a sentence other than death, especially in light of the compelling aggravating circumstances that the defendant had been convicted of murder on *two* prior and separate occasions. Therefore, even assuming, but not deciding, that trial counsel's performance was deficient, defendant fails to demonstrate a reasonable probability of a different result with effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The Florida Supreme Court affirmed the Circuit Court's denial of Parker's claim of ineffective assistance of counsel at capital sentencing. *Parker 3*, 611 So.2d

at 1227-28. In a portion of its opinion addressing a separate ineffective assistance of counsel claim, not raised in this proceeding, the Florida Supreme Court imprecisely stated the prejudice prong of the *Strickland* test as follows: "In order to prevail on his claim that trial counsel was ineffective in failing to challenge these prior convictions, Parker must show that his trial counsel's performance was deficient and that the result of the proceeding *would have been different* absent the deficient performance."[16] *Id.* at 1227 (emphasis added). After addressing this separate ineffective assistance claim, the Florida Supreme Court addressed Parker's claim of ineffective assistance of counsel at capital sentencing:

> After the December 1988 evidentiary hearing, the trial court [Circuit Court] denied relief on Parker's claims that trial counsel was ineffective in the penalty phase. Here too we agree with the trial judge's conclusion that Parker failed to meet the *Strickland* test. She found, in response to claims that family members should have been called in the penalty phase, that
>> in these post-conviction proceedings, three cousins, a sister and an aunt were called. However, because [Parker] had spent more than ten years in prison for a prior murder, these witnesses had had little contact with [him] in the years immediately before the crimes were committed. Their statements had little impact, and, at times, supported the view that [Parker] appeared normal, rather than brain-damaged and impaired.

---

[16] The proper standard for prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) is whether the jury's failure to hear the mitigating evidence undermines the confidence in its verdict, thus demonstrating a *reasonable probability* of a different result.

The trial court also rejected the claim that counsel was ineffective for failing to present the testimony of Dr. Stillman, a psychiatrist, in the penalty phase. The court explained:

> Dr. Stillman's testimony is wholly unpersuasive. His conclusion that [Parker] is brain-damaged rests on the relatives' post-sentencing report of [Parker's] brief loss of consciousness in two childhood accidents. Significantly, [Parker] himself denied any accidents in his 1980 interview with Dr. Stillman and [Parker] presents no medical record of any kind to substantiate these alleged injuries. In fact, his IQ, as tested by Dr. Stillman, is slightly higher than average, and there is no objective indication of [Parker's] compromised intellectual functioning. Dr. Stillman's opinion is simply that brain damage invariably results from loss of consciousness, no matter how brief the period of unconsciousness. Moreover, Dr. Stillman's conclusions that [Parker] was incompetent to stand trial and insane at the time of the offense–neither conclusion being urged by [Parker] in these proceedings, and both conclusions being contradicted by the overwhelming evidence in the case–undermine the credibility of his further opinion that [Parker's] capacity to conform his conduct to law was impaired.
>
> The court cannot conclude that the jury likely would have been persuaded by such testimony to recommend a sentence other than death, especially in light of the compelling aggravating circumstance that [Parker] had been convicted of murder on two prior and separate occasions.

We find no error in the trial court's conclusions.

*Id.* at 1227-28.

Parker's ineffective assistance claim is governed by the familiar two-prong analysis from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the

41

defense." *Id.* at 687, 104 S. Ct. at 2064. To establish ineffectiveness, a "defendant must show that counsel's representations fell below an objective standard of reasonableness." *Id.* To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068.

### 1. *"Contrary To"*

The District Court found the Florida Supreme Court's decision denying Parker's Rule 3.850 motion to be "contrary to" *Strickland* because the Florida Supreme Court misstated the prejudice prong as requiring Parker to show "that the result of the proceeding would have been different," rather than "a reasonable probability" that the result of the proceeding would have been different. After conducting a *de novo* review, however, the District Court denied Parker's ineffective claim, finding Parker had not established either the deficient performance or prejudice prong of *Strickland.*

The State argues the Florida Supreme Court's decision was not "contrary to" federal law simply because it improperly paraphrased the prejudice prong of *Strickland* in one sentence of its opinion. The State points out the Florida Supreme Court correctly cited *Strickland* (which established the "reasonable probability"

42

standard) as the controlling federal law. Furthermore, the Florida Supreme Court relied heavily upon the reasoning of the Circuit Court and adopted its conclusions. The Circuit Court had correctly enunciated the prejudice prong of *Strickland*, finding "even assuming, but not deciding, that trial counsel's performance was deficient, defendant fails to demonstrate a reasonable probability of a different result with effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." Although the Florida Supreme Court did not quote this part of the Circuit Court opinion or use the words "reasonable probability" in its opinion, the Florida Supreme Court did quote the Circuit Court's statement that it "cannot conclude that the jury *likely* would have been persuaded by such testimony to recommend a sentence other than death. . . ." *Parker 3*, 611 So. 2d at 1228 (emphasis added).

By using the modifier "likely" instead of "reasonable probability," the Florida Supreme Court did not precisely enunciate the prejudice prong of *Strickland*. Nevertheless, we do not read its opinion as a rejection of *Strickland* or an adoption of a "more likely than not" standard, which would be "contrary to" federal law. *See Williams v. Taylor*, 529 U.S. 362, 406, 120 S. Ct. 1495, 1519 (2000) (stating that a state court decision rejecting an ineffective assistance claim "on the grounds that the prisoner had not established by a preponderance of the evidence that the result would

43

have been different," would be contrary to clearly established federal law "because we held in *Strickland* that the prisoner need only demonstrate a 'reasonable probability that . . . . the result of the proceeding would have been different.'").

In *Wright v. Moore*, 278 F.3d 1245 (11th Cir. 2002), this court stressed that under § 2254(d)(1) we review the state court's "decision" and not necessarily its rationale. *Id.* at 1255 ("The statutory language [of § 2254(d)(1)] focuses on the result, not on the reasoning that led to the result . . . ."). We cautioned that overemphasis on the language of a state court's rationale would lead to "a 'grading papers' approach that is outmoded in the post-AEDPA era." *Id.* at 1255; *see also Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997) (rejecting the approach that § 2254(d)(1) would have federal habeas courts judge the quality of the state court's reasoning, because such an approach "would place the federal court in just the kind of tutelary relation to the state courts that the recent amendments are designed to end"). Although a state court opinion containing a "conspicuous misapplication of Supreme Court precedent" would not be entitled to deference under the AEDPA, "[w]e will not presume that a state court misapplied federal law, and absent indication to the contrary will assume that state courts do understand 'clearly established Federal law . . . as determined by the Supreme Court of the United States.'" *Wright*, 1256 F.3d at 1256 n.3 (quoting 28 U.S.C. § 2254(d)(1)).

44

Recently, the Supreme Court held that the California Supreme Court's occasional reference to *Strickland*'s "reasonable probability" standard by use of the term "probable" without the modifier may have been imprecise, but was not a repudiation of *Strickland* and did not render the California Supreme Court's decision "contrary to" *Strickland*. *Woodford v. Visciotti*, __ U.S. __, 123 S. Ct. 357, 359 (2002). The Court found it particularly relevant that although the California Supreme Court occasionally used imprecise language, in other parts of its opinion the California Supreme Court properly described the *Strickland* standard in terms of a "reasonable probability" and "undermin[ing] confidence in the outcome." *Id.* In reversing the Ninth Circuit, the Court found the Ninth Circuit's "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law," and "also incompatible with § 2254(d)'s 'highly deferential standard for evaluating state-court rulings,' which demands that state court decisions be given the benefit of the doubt." *Id.* at 360 (internal citation omitted).

Similarly, in this case, although the Florida Supreme Court used imprecise language to describe the prejudice prong, the court correctly cited *Strickland* as the controlling federal authority, relied upon the Circuit Court's reasoning (which included a proper enunciation of the "reasonable probability" standard), and cited the Circuit Court's conclusion that it "cannot conclude that the jury likely would have

been persuaded by such testimony to recommend a sentence other than death . . . ." *Parker 3*, 611 So. 2d at 1228. Despite the imprecise language used by the Florida Supreme Court, we conclude the court understood and applied the correct prejudice standard from *Strickland*. This deferential approach is consistent with our view that if a state court denies a prisoner's claim without any reasoning at all, it is still entitled to AEDPA deference. *See Wright*, 278 F.3d at 1255. Thus, we conclude the Florida Supreme Court's decision was not "contrary to" clearly established federal law as determined by the United States Supreme Court.[17]

### 2. *De Novo Review*

Even if the Florida Supreme Court's decision were contrary to *Strickland*, we would affirm the district court's *de novo* analysis that Parker has not established deficient performance or prejudice under *Strickland*. Our own review of the record, the factual findings of the district court (which we review for clear error), and the factual findings of the state courts (which we must accept as true unless rebutted by clear and convincing evidence), would lead us to conclude that counsel's performance was not constitutionally deficient, and, even if it were, there is no reasonable

---

[17] For the reasons stated in the following section, we also conclude the Florida Supreme Court's decision did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court; nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d).

46

probability that, absent counsel's deficient performance, the result of the proceeding would have been different.

### a. Deficient Performance

"No absolute rules dictate what is reasonable performance for lawyers." *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000). "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Although there is no absolute duty to investigate particular facts or a certain line of defense, a complete failure to investigate may constitute deficient performance of counsel in some circumstances. *Crawford v. Head*, 311 F.3d 1288, 1297 (11th Cir. 2002); *see Housel v. Head*, 238 F.3d 1289, 1294 (11th Cir. 2001) ("A failure to investigate can be deficient performance in a capital case when counsel totally fails to inquire into the defendant's past or present behavior or life history.").

*Strickland* requires that counsel either make a reasonable investigation of the law and facts relevant to a case or make a reasonable decision not to carry out a

particular investigation. *Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066. "Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on investigation." *Id.*

Similarly, "[n]o absolute duty exists to introduce mitigating or character evidence." *Chandler*, 218 F.3d at 1319 (11th Cir. 2002). "Counsel who fail to present any mitigating evidence, even when it is available at sentencing, may still be deemed constitutionally effective, provided that the decision not to present mitigating evidence was a tactical one based on the results of a reasonable investigation." *Hubbard v. Haley*, 317 F.3d 1245, 1260 (11th Cir. 2003) (citations omitted). "Considering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others." *Chandler*, 218 F.3d at 1319.

Parker argues his attorneys were ineffective because they spent virtually all of their time preparing for the guilt phase of the trial, did not adequately prepare for the sentencing phase of the trial, and relied solely on a reasonable doubt argument at sentencing which the jury had already rejected during the guilt phase. Specifically, Parker claims counsel should have presented mitigating evidence of his

48

disadvantaged upbringing, alcohol and substance abuse, psychological disorders, and brain damage. Parker suggests counsel should have presented this evidence through the testimony of his family members, Dr. Stillman, and Dr. Haber.

We conclude Parker's attorneys were not deficient in focusing their time and energy on acquittal at trial and focusing their arguments at sentencing on residual doubt (instead of other forms of mitigation). In cases like this, when guilt is in fact denied and counsel reasonably employs a lingering doubt strategy at sentencing, a "lawyer's time and effort in preparing to defend his client in the guilt phase of a capital case continues to count at the sentencing phase." *Tarver v. Hopper*, 169 F.3d 710, 715 (11th Cir. 1999). Creating lingering or residual doubt over a defendant's guilt is not only a reasonable strategy, but "is perhaps the most effective strategy to employ at sentencing." *See Chandler*, 218 F.3d at 1320; *Tarver*, 169 F.3d at 715–16 (citing a comprehensive study on the opinions of jurors in capital cases and other law review articles concluding that raising residual doubt over a defendant's guilt is "the best thing a capital defendant can do to improve his chances of receiving a life sentence").[18]

---

[18]Parker claims his attorney's reliance on lingering doubt was not a strategic choice, but resulted from inadequate preparation. Given the testimony from Parker's attorneys regarding their investigation, we disagree.

Parker's attorneys talked to some of Parker's family members, including his step-mother, and investigated Parker's background. Their investigation was limited, however, because they knew Parker had been incarcerated for a previous murder and thus had little contact with his family in the years immediately before this murder. Roffino testified he attempted to investigate Parker's family background, but Parker was not helpful in finding family members and the family members who Roffino was able to contact were either "unconcerned or uncooperative." Given counsel's reasonable attempts to investigate Parker's family background, the difficulties in procuring information from Parker's family, and the limited value of such information, Parker's attorneys were not deficient in failing to seek out additional mitigating evidence from Parker's family members.

Counsel reasonably decided not to present evidence of drug abuse because it was inconsistent with Parker's denial that he was abusing drugs and his involvement in a drug treatment program while in prison. Moreover, there was no evidence that Parker was intoxicated at the time of the crime.

Counsel did not see any signs of brain damage or mental disorder. Additionally, counsel feared that evidence of mental defects and personality disorder would undermine Parker's credibility and be inconsistent with his alibi defense.

Counsel decided not to put Dr. Stillman on the stand because Dr. Stillman had opined that Parker was antisocial and a sociopath, a diagnosis the jury might not consider mitigating. Furthermore, we must accept the Circuit Court's and Florida Supreme Court's factual finding that Dr. Stillman's testimony regarding brain damage, substance abuse, and personality disorder was "wholly unpersuasive." *Parker 3*, 611 So. 2d at 1228. Counsel cannot be deemed deficient in failing to call a witness whose testimony is of such limited value.[19]

Considering the limited value of the mitigating evidence Parker claims should have been introduced, and the fact that such evidence was often inconsistent with other evidence already before the court, we conclude Parker's attorneys were reasonable in relying on lingering doubt and not introducing this other potentially mitigating evidence.

### b. *Prejudice*

Even assuming Parker's counsel's performance was deficient, Parker would not demonstrate prejudice. Given the strength of the aggravating factors and the relative weakness of the mitigating evidence Parker argues should have been presented, there is no reasonable probability that, absent the deficient performance, the outcome of the

---

[19] We also find counsel was not deficient in failing to provide Dr. Stillman with background information which could have been used in his assessment of Parker.

51

proceedings would have been different. The aggravating factors in this case are substantial The jury knew that Parker had committed two previous murders for which he had received life sentences. The state trial judge found: (1) the crime was cold, calculated and premeditated, (2) committed under sentence of imprisonment, (3) followed a prior violent felony conviction, (4) was committed during the course of a sexual battery, and (5) was committed for pecuniary gain.[20]

The Circuit Court and Florida Supreme Court found the testimony from Parker's family members would have "had little impact" on the penalty phase because they had "little contact" with Parker in the years preceding the murder and their testimony "at times, supported the view that [Parker] appeared normal, rather than

---

[20] The trial court specifically found:

> The testimony of the three surviving victims in this case indicated NORMAN PARKER, JR. acted without any of the qualities we identify as belonging to rational and moral human beings. Apparently, NORMAN PARKER, JR. came along with his friend and drug dealing partner, Robbie Manson, in a planned drug "rip-off" of the victim. Whereas, Manson was willing to leave after taking the cocaine and other items from the victims, NORMAN PARKER, JR., ignoring Manson's repeated urgings to leave, stayed to rape Silvia Arana. For no apparent reason other than to silence Silvia Arana's objecting boyfriend, NORMAN PARKER, JR. shot Julio Chavez in the back, and proceeded immediately thereafter, while Julio was languishing on the bed, to rape and defile Silvia Arana. . . .
> The depravity of NORMAN PARKER, JR.'s acts, combined with the clear evidence that these acts were not isolated, but are part of a pattern of behavior in his life that cannot be tolerated in our society, require the imposition of the death penalty.

brain-damaged and impaired." *Parker 3*, 611 So. 2d at 1228. The Circuit Court and Florida Supreme Court also found Dr. Stillman's testimony "wholly unpersuasive." *Id.* Parker has not rebutted these factual findings with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Dr. Haber's testimony is likewise of very limited value to Parker. Although Dr. Haber found some soft signs of brain damage, his other findings refute a finding of mental impairment. In fact, the district court found that Dr. Haber's testimony rebutted Dr. Stillman's testimony that Parker suffers from brain damage.

Given the state court's factual findings, we conclude that assuming, but not deciding, trial counsel's performance was deficient, Parker has failed to demonstrate a reasonable probability of a different result with effective assistance of counsel.

## IV. CONCLUSION

The District Court incorrectly concluded that Parker's substantive challenge to the deficient felony murder instructions was procedurally barred by the Florida Supreme Court. In fact, Parker presented this substantive challenge during his state habeas proceedings and the Florida Supreme Court did not procedurally bar that claim. We must therefore review that claim on the merits. The Florida Supreme Court's conclusion that the deficient felony murder instructions constituted harmless error because of overwhelming evidence of premeditation was contrary to clearly

53

established federal law under *Stromberg*. However, in reviewing Parker's challenge *de novo*, we find that any error in the oral instructions was rendered harmless by the complete and accurate written instructions on first-degree felony murder and the instructions on third-degree felony murder.

The state court adjudication of Parker's claim of ineffective assistance of counsel at capital sentencing did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). Furthermore, after conducting a *de novo* review of this claim and giving proper deference to the factual findings made by the state courts, we conclude that Parker could not demonstrate that his counsel's performance was constitutionally deficient, and assuming counsel's performance was deficient, Parker could not show that the deficient performance prejudiced his defense.

AFFIRMED.