[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11534
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-24885-JAL


ERIC CHRISTOPHER BARRASS,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 7, 2019)

Before WILLIAM PRYOR, BRANCH and JULIE CARNES, Circuit Judges.

PER CURIAM:

Eric Barrass, a Florida prisoner, appeals the denial of his petition for a writ of habeas corpus seeking relief from his conviction for the attempted second degree murder of Tim Cummings. 28 U.S.C. § 2254. We granted Barrass a certificate of appealability to address whether the Florida courts violated his right to due process by excluding from evidence Christopher Travis's hearsay that he defended Barrass by shooting Cummings. Because it was not contrary to or an unreasonable application of clearly established federal law for the state courts to exclude Travis's statements as inadmissible hearsay, we affirm.

## I. BACKGROUND

Around 6:00 a.m. on August 6, 2006, Barrass drove Travis and two other friends to a residence in Miami-Dade County where, during a brawl with Cummings and other men, Cummings was shot in the back. When Barrass revisited the residence, he was arrested and volunteered that he shot Cummings in self-defense. In a later interview by a detective, Barrass repeated his admission.

A Florida grand jury indicted Barrass for attempted first degree murder by shooting Cummings, Fla. Stat. §§ 782.04(1)(A)1, 777.04(1), and for battering Cummings, *id.* § 784.03. Barrass entered pleas of not guilty to the offenses. Barrass's defense was that he falsely confessed to protect Travis, who had admitted to shooting Cummings to defend Barrass.

2

On August 19, 2006, Barrass's investigator interviewed Travis, who stated that he "was dropped off at [his] house" at 6:00 a.m. by Barrass who "came back" complaining about two men "standing in the middle of the road [that] wouldn't let him pass by and were threatening him." Travis recounted that he, "Andrew and Mike" rode down the street with Barrass until they encountered men "jumping around . . . [and] threatening . . . to fight." Travis stated that "[o]ne of the guys knocked [Barrass] out, punched him . . . [i]n the head . . . two or three [times] . . . [and] knocked him to the ground," retrieved "what appeared to be a gun from underneath the passenger seat" of a truck, and "walked towards [Barrass] and . . . pointed the gun at him." Travis "thought that [Barrass] was going to get killed," so Travis "ran to [Barrass's] truck" to obtain Barrass's gun and "fired one shot." Travis stated that the bullet struck the man's right "back shoulder blade area" and caused him to fall "on the ground then he ran away" and "might have fired some shots" as he fled. When asked if "at any point and time did [Barrass] fire a gun," Travis responded "No."

The prosecutor deposed four persons who reportedly spoke with Travis after the shooting. Shaun Baker testified that, on the morning of August 6, 2006, Travis said that he, Barrass, Mike, and Andrew fought Cummings, Cummings knocked out Barrass, Andrew kicked Cummings in the head, Cummings obtained a gun and walked toward Barrass, and then Travis retrieved Barrass's gun from his vehicle

3

and shot Cummings in the back. Casandra Chily testified that Travis twice told her that Barrass was fighting Cummings and someone was going to shoot Barrass, so Travis shot Cummings in a nonlethal area before he could hurt Barrass. David Palacios testified that he went to Travis's home on August 6, 2006, to discuss the shooting and that Travis said Cummings was beating Barrass, he went to Barrass's car to get a gun, he heard two gunshots, and he shot Cummings with Barrass's gun. Tina Bauer testified that, after the brawl, Travis returned home and said he shot Cummings because he had knocked out Barrass and threatened to execute Barrass with a gun.

The prosecutor moved *in limine* to exclude Travis's statements from trial. The prosecutor argued that Travis's statements were hearsay that failed to qualify for the exception for declarations against penal interest, *see* Fla. Stat. § 90.804(2)(c), because his statements were exculpatory, *see id.* § 776.012 (justifying the use of force to defend another person), and inconsistences in the statements made them untrustworthy. Barrass responded that Travis's statements were against his penal interest because he could be prosecuted for shooting Cummings and for possessing and using a firearm while on probation.

The trial court held a hearing on the motion. The trial court determined that Travis's admissions to defending another person were not sufficiently against his penal interest to qualify for the exception to the rule excluding hearsay evidence

4

under Florida law, *id.* § 90.804(2)(c), or under federal law, Fed. R. Evid. 804(b)(3), but the trial court withheld ruling on the motion to determine Travis's availability for trial. The trial court explained that it "chose to follow U.S. Supreme Court and Florida Supreme Court" precedent governing the issue. Barrass objected and filed a memorandum in which he argued, for the first time, that excluding the evidence "would deprive him of his U.S. and State of Florida constitutional rights to due process of law, the right to call witnesses on his behalf, the right to assert a defense, and his right to a fair trial" under *Holmes v. South Carolina*, 547 U.S. 319 (2006), *Chambers v. Mississippi*, 410 U.S. 284 (1973), *Green v. Georgia*, 442 U.S. 95 (1979), and *Washington v. Texas*, 388 U.S. 14 (1967).

The trial court held a second hearing on the pretrial motion. Barrass's investigator testified that Travis was unwilling to testify at trial but agreed to provide a tape-recorded statement that he shot Cummings. The trial court ruled that Travis was unavailable and that his admission was excluded "under 804." The trial court allowed Barrass to proffer testimony from Bauer and from Chily about Travis's statements and to admit transcripts of Baker's and Palacios's depositions. After each proffer, the trial court ruled that the respective statement did not qualify "under 804" as a declaration against Travis's penal interest. The trial court also summarily rejected Barrass's arguments that Travis's statements, viewed in context, were against his penal interest, *see Williamson v. United States*, 512 U.S.

5

594 (1994), and that excluding the evidence "absolutely gutted [his] defense" and "prevented him from getting a fair trial and being able to defend himself" like the defendant in *Holmes*, 126 S. Ct. 1727.

The jury found Barrass guilty of the lesser-included offense of attempted second degree murder after hearing the testimonies of Cummings, Brian Cespedes, one of Cummings's neighbors, and the arresting officer to whom Barrass confessed, and the audio recording of Barrass's interview. Cummings testified that he wrestled with Barrass, he heard gunshots that he did not think Barrass fired, and when he fled, he experienced a burning sensation in his back. Cespedes testified that he saw Travis fire a silver handgun twice into the air and, after he heard a third gunshot that sounded different, Barrass pointed a black handgun in Cespedes's face. Cummings's neighbor testified that he woke to the sound of fireworks, he saw Barrass holding a handgun as he approached Cespedes and Mike, and then he heard Cummings scream in pain and shout that he had been shot. The officer who arrested Barrass testified that he found no evidence of a silver handgun, that he seized a black handgun from Barrass's truck, and that Barrass admitted to shooting Cummings in self-defense. During the interview, Barrass confessed that he wrestled Cummings, retreated to his truck, and after Cummings warned him to stay away or he would be shot "like a dog," he retrieved his gun from his truck and shot

6

four times in Cummings's direction because, based on their previous scuffles, he thought Cummings was armed.

Barrass argued to the jury that he was innocent. He elicited from Cummings on cross-examination that he never saw or felt Barrass holding a gun. Barrass impeached Cespedes and had him admit that he never mentioned a silver handgun to the police. And Barrass testified that he falsely confessed to shooting Cummings to protect Travis. Barrass stated that Cummings punched him senseless, he heard two gunshots and saw Cummings flee, and he then saw his gun in Travis's hand, who stated that he shot Cummings.

Barrass twice challenged without success his attempted second degree murder conviction in the state courts. Barrass argued on direct appeal that Travis's statements constituted declarations against penal interest that were excepted from the state rule that excluded hearsay evidence, Fla. Stat. § 90.804(2)(c), and that the trial court failed "to protect [his] federal and Florida constitutional rights to due process and compulsory process" as required by *Chambers* and *Holmes*. The Florida appellate court affirmed summarily Barrass's conviction. *Barrass v. State*, 13 So. 3d 476 (Fla. Dist. Ct. App. 2009). Barrass moved for state postconviction relief and sought to compel Travis to testify on the ground that his statement to the investigator constituted newly-discovered evidence because the passage of time made it unnecessary to invoke his right against self-incrimination under the Fifth

Amendment. *See* Fla. R. Crim. P. 3.850. The trial court denied Barrass's motion, and the Florida appellate court affirmed summarily, *Barrass v. State*, 109 So. 3d 1163 (Fla. Dist. Ct. App. 2013).

Barrass filed a federal petition for a writ of habeas corpus, which the district court denied. The district court ruled that the decision of the state courts was not contrary to clearly established federal law because "the Supreme Court has never addressed whether the state court's evidentiary ruling—that testimony regarding a third-party's confession should be excluded if the confession provided for a complete defense—violates a criminal defendant's right to present a complete defense." The district court also ruled that "the state court's specific evidentiary ruling [was] not an unreasonable application of general constitutional principles."

## II. STANDARD OF REVIEW

We review *de novo* the denial of a petition for a writ of habeas corpus. *Pittman v. Sec'y, Fla. Dep't of Corr.*, 871 F.3d 1231, 1243 (11th Cir. 2017). Our review is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996, which "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). Under the Act, a federal court may not grant a state prisoner a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Because the Act provides that factual findings of the state courts are "presumed to be correct," the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

Barrass raises two arguments on appeal. First, Barrass argues that the district court erred by deferring to the decision of the state courts because those courts failed to decide his claim that excluding evidence of an alternative shooter violated his federal right to present a meaningful defense. *See* 28 U.S.C. § 2254(d)(1). Barrass argues, that under a *de novo* standard of review, he should prevail on that claim. Second, Barrass argues, in the alternative, that the state courts ruled contrary to or unreasonably applied clearly established federal law. We address each argument in turn.

### A. The District Court Correctly Deferred to the Decision of the Florida Courts.

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). "That presumption

9

stands unless rebutted by evidence from the state court's decision and the record in the case that 'leads very clearly to the conclusion that the federal claim was inadvertently overlooked in state court.'" *Pittman*, 871 F.3d at 1245 (quoting *Childers v. Floyd*, 736 F.3d 1331, 1334 (11th Cir. 2013)). In the light of the record, the decision of the Florida courts was entitled to deference.

The state trial court perceived during pretrial proceedings that the exclusion of Travis's statements could implicate Barrass's constitutional rights. Before trial, the prosecutor argued to exclude Travis's statements under state law, Fla. Stat. § 90.804(2)(c), yet the trial court excluded the evidence for failing to "meet the criteria" for admission "under State law" and under "Federal law which [had the] similar rule [in Federal Rule of Evidence] 804[(b)(3)]." The trial court also highlighted that it was "follow[ing] U.S. Supreme Court and Florida Supreme Court" precedent in reaching its decision.

The trial court also rejected summarily Barrass's specific written and oral arguments that the exclusion of Travis's statements deprived him of his rights to due process, to develop his defense, and to a fair trial as articulated in *Holmes*, 547 U.S. 319, *Chambers*, 410 U.S. 284, *Green*, 442 U.S. 95, and *Washington*, 388 U.S. 14. A summary rejection of an argument qualifies as an adjudication of the merits and warrants deference. *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245,

1254–55 (11th Cir. 2002). The summary decision to deny Barrass's federal claim was entitled to deference.

The state appellate court considered Barrass's federal claim too. On direct appeal, Barrass argued that, "even if [Travis's] statement did not strictly comply with the criteria of section 90.804(2)(c), the statement was admissible to protect Barrass's federal and Florida constitutional rights to due process and compulsory process." And Barrass dedicated six pages of his argument to explaining why the exclusion of Travis's statements violated his right to present a defense as articulated in *Holmes* and *Chambers*. The state, in turn, devoted three pages to addressing how "the exclusion of [Travis's] statement did not violate [Barrass's] constitutional rights." Nothing in this record "leads very clearly to the conclusion that [Barrass's] federal claim was inadvertently overlooked" by the Florida courts. *See Pittman*, 871 F.3d at 1245 (quoting *Childers*, 736 F.3d at 1334).

## B. The Decision by the State Courts Was Not Contrary To or an Unreasonable Application of Clearly Established Federal Law.

Supreme Court precedent establishes that criminal defendants have a clearly established right to present a meaningful defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Pittman*, 871 F.3d at 1246 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

11

That right is tempered by the defendant's obligation to "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* (quoting *Chambers*, 410 U.S. at 302). The state enjoys "broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *Holmes*, 547 U.S. at 324, like "[t]he hearsay rule," which serves the important purpose of excluding statements that "are subject to particular hazards," *Williamson*, 512 U.S. at 598. *See Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). If the rule is "'arbitrary or disproportionate to the purposes [it is] designed to serve' [it] must fall to the accused's right to present a defense." *Pittman*, 871 F.3d at 1246 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)); *Holmes*, 547 U.S. at 325.

Barrass argues that the exclusion of Travis's statement violated his right to due process by depriving him of the defense that another person shot Cummings. Barrass argues that the decision of the state courts was contrary to and an unreasonable application of *Chambers v. Mississippi*, 410 U.S. 298, and *Green v. Georgia*, 442 U.S. 95. For the decision to fall within the "contrary to" clause of section 2254(d), the state courts had to reach "a conclusion opposite to that reached by the Supreme Court on a question of law" or to "decide[] a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Pittman*, 871 F.3d at 1244 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (alterations

adopted). To constitute an "unreasonable application" of clearly established federal law, the state courts must have "identifie[d] the correct governing legal principle from the Supreme Court's decisions but unreasonably applie[d] that principle to the facts." *Id.* at 1246 (quoting *Williams*, 529 U.S. at 413) (alteration adopted).

The Florida courts excluded Barrass's evidence on the ground it failed to qualify for the exception to the hearsay rule for declarations against interest. The trial court found that Travis's statement was exculpatory and, hence, lacked the characteristic that is fundamental to a declaration against interest. *See* Fla. Stat. § 90.804(2)(c); Fed. R. Evid. 804(b)(3). The trial court reasoned that Travis's statement was not, as required under Florida law, "at the time of its making, . . . so far contrary to [Travis's] . . . interest . . . that a person in [his] position would not have made the statement unless he . . . believed it to be true," *see* Fla. Stat. § 90.804(2)(c), and failed to create "so great a tendency . . . to expose [him] to . . . criminal liability" to make the statement admissible under federal law. *See* Fed. R. Evid. 804(b)(3)(A).

We presume that the finding of the state courts that Travis's statements were exculpatory is correct, and Barrass offers no evidence, let alone clear and convincing evidence, to rebut that presumption. *See* 28 U.S.C. § 2254(e)(1). "[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context," *Williamson*, 512 U.S. at 603, "which require[s] careful

examination of all the circumstances surrounding the criminal activity involved," *id.* at 604. Travis's statements were not self-inculpatory because they supported a legal excuse for his conduct. On each occasion that Travis confessed to shooting Cummings, he stated that he did so to protect Barrass. *See* Fla. Stat. § 776.012. Travis's exculpatory statements were not "so far contrary to [his penal] . . . interest" as to make them admissible. *See* Fla. Stat. § 90.804(2)(c).

The state courts did not reach a legal conclusion contrary to *Chambers* or *Green*. The Supreme Court has never held that the exclusion of a third-party's exculpatory confession based on a well-established evidentiary rule violates a defendant's right to present a complete defense. *Chambers* and *Green* hold that the exclusion of trustworthy third-party inculpatory confessions based on the mechanistic application of outdated evidentiary rules violates a defendant's right to due process. *Chambers*, 410 U.S. at 293–94; *Green*, 442 U.S. at 96–97. The defendants in *Chambers* and *Green* were unable to introduce the inculpatory confessions because the states where the crimes occurred, unlike most other states, had not recognized an exception to the hearsay rule for declarations against penal interest, which would have rendered the confessions admissible. *Chambers*, 410 U.S. at 298–301; *Green*, 442 U.S. at 97 & n.1. In contrast, the Florida courts applied the hearsay exception endorsed in *Chambers* and *Green* and determined

14

that, unlike the inculpatory confessions in those cases, Travis's exculpatory statement failed to qualify as a declaration against his penal interest.

Barrass's case is materially distinguishable from *Chambers* and *Green*. Travis's statements were exculpatory, which is a far cry from the third-party confessions in *Chambers*, which were "self-incriminatory and unquestionably against interest," 410 U.S. at 301, and the third-party confession in *Green*, which also "was against interest," 442 U.S. at 97. Barrass twice admitted to shooting Cummings, but the defendants in *Chambers* and *Green* steadfastly maintained that they were innocent.

The circumstances surrounding Barrass's statements also do not provide "persuasive assurances of trustworthiness," *Chambers*, 410 U.S. at 302, or "substantial reasons . . . to assume [their] reliability," *Green*, 442 U.S. at 97. As the prosecutor argued in the motion *in limine*, Travis told Barrass's witnesses different stories, and those stories differed from the version of events Barrass recounted at trial. The trial court could have thought that Travis fabricated a story that would mutually benefit himself and his friend Barrass. Travis's admissions provided him a legal excuse for his use of force against Cummings and Barrass a defense too. Travis's admission also was suspect given his refusal to testify at trial, but his willingness to provide hearsay evidence for Barrass to use at trial. And, in striking

15

contrast to *Chambers* and *Green*, no physical evidence connected Travis to the shooting.

Finally, unlike in *Chambers* and *Green*, the exclusion of Travis's statements did not prevent Barrass from presenting his defense of an alternative shooter. Barrass testified that Travis shot Cummings, and Cummings testified that he never saw Barrass with a gun. The decision to exclude Barrass's evidence does not conflict with *Chambers* and *Green*.

The state courts also reasonably applied clearly established federal law in excluding Travis's hearsay. *Chambers* and related precedents instruct that "an accused [seeking] to present witnesses in his own defense" "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302; *see Holmes*, 547 U.S. at 326 ("[T]he Constitution permits judges 'to exclude evidence that is "repetitive . . ., only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues."'"); *Egelhoff*, 518 U.S. at 53 (stating its precedents do not "undermine the principle that the introduction of relevant evidence can be limited by the State for a 'valid' reason"). The state courts reasonably determined that the rules governing the admission of hearsay in Florida were consistent with the "state's legitimate interest in excluding unreliable and untrustworthy testimony from a jury's consideration." *See Pittman*, 871 F.3d at

16

1248. And we cannot say that the state courts unreasonably applied *Chambers* by excluding Travis's statements as inadmissible hearsay. Travis's statements were exculpatory instead of being against his penal interest, *see* Fla. Stat. § 90.804(2)(c); Fed. R. Evid. 804(b)(3), and the trial court reasonably could have found that Barrass's confessions and his witnesses' testimony failed to provide the type of "persuasive assurances of trustworthiness" that existed in *Chambers*, 410 U.S. at 302. The state courts reasonably concluded that the rules regulating hearsay are neither arbitrary nor disproportionate to the interests they serve, and the state courts reasonably concluded that the application of those rules did not violate Barrass's right to present a complete defense.

## IV. CONCLUSION

We **AFFIRM** the denial of Barrass's petition for a writ of habeas corpus.